Centre for the Human Rights on this appeal we submit that pretty clearly Mount Healthy was the wrong way to dispose of this case below on summary judgement. In our papers we make two arguments on these lines. First of all, we make the legal argument that in order to even get to Mount Healthy, the district court has to take a preliminary step, which is to determine whether a prima facie case has been made out, which includes a finding of what, if anything, the protected speech was. Just to sort of refine or to focus this part of our argument, I thought of a visual which is helpful for me to conceive anyway. If you picture maybe a blank piece of paper, a circle in the middle of it, everything inside the circle is what the speech is. When you're applying the Mount Healthy defense, the question, would the same action have been taken but for the speech? That refers to everything outside the circle. So when we ask the question, what is the protected speech, the reason that's important is because we need to know what the protected speech is not, because that's what the Mount Healthy application is. Would they have taken the same actions based on stuff that's not within the circle? We submit that that's required under the case law. Is the stuff outside the circle the conduct? Because that's what I'm having a hard time figuring out here, is how you separate the speech from the conduct and what happened. Well Judge, in this case, this case is just not a good example of finding stuff outside the circle. Here it's all speech. You know, the government points to stuff like... It's how the speech was uttered, how the speech was presented. It was done in an incredibly rude and belligerent and disrespectful manner. And... Why can't we just look at how it was done? I mean, let's assume the conversation was about the Knick game the night before and what a terrible job they did, but the way he did it, why isn't that sufficient for a healthy analysis? Well, let me put it this way. Down below, there was a mediation with Magistrate Judge Aaron. He put the question to me, what if instead of getting in an argument and saying the words... You're not really supposed to tell us what happens during a mediation. The question was put to me, what if instead of saying the words he did say, he made the most egregious, outrageous, racial insults imaginable? Could they still have taken away his promotion? The answer is yes. Before I really did a deep dive into all this law, I didn't quite know why. The answer is yes, but not because of Mount Healthy. That's still protected speech. It's still inside the circle. The answer would be yes, but because of Pickering. But what if we take it the opposite way, which is the analysis of the Knicks was not the feet on the seat. I ride the train a lot. If the conductor said, instead of saying, please put your mask on properly, said, please take your feet off the seat, I don't think anybody would assert there's a First Amendment right to talk about feet on the seat. So if we just change that aspect, then under either standard, isn't there enough other conduct, other activity, either at Mount Healthy or Pickering? Well, here there's... So if the discussion is about please take your feet off the seat, that's probably not a matter of public concern. Here he's talking about what's clearly matters of public concern. He's also clearly a private citizen in this context. He's not wearing a suit and tie. At this time, he's wearing shorts and flip-flops. But you were saying it was hard to separate the two issues. My point is that sort of what Judge Chin is saying, isn't it the way it was done is separable. You can say, sir, respectfully, I declined to wear a mask and I believe it's my constitutional right to decline and I'll take this to the courts and leave it at that. Well, Judge, the First Amendment doesn't just protect polite speech. It wouldn't be necessary if there wasn't objectionable speech, speech that people might not like. His supervisors at the Workers' Comp Board clearly didn't like it, but that's the subjective opinion that it was rude, et cetera. It's still constitutionally protected. But only because of what its content, right? Only because it was out about a mask, isn't that? If he'd asserted that he had a constitutional right to put his feet on the seat, would we really be seriously considering a First Amendment claim here? I'm not sure if I would agree with that, Judge, but I think under the facts we have here, it clearly is a prima facie case that's made out. Is there evidence in the record to indicate that the decision makers were concerned about the content of the speech as opposed to the way the remarks were uttered? Well, so as to proving what their motive was, that's not really the plaintiff's burden. Certainly they can't get summary judgment at this stage. Well, if the argument is a First Amendment claim, is there anything to show that they were concerned with the content, the substance of the remarks, as opposed to the way he uttered them? In other words, under Mt. Healthy, assuming there was a retaliatory motive about the content, under Mt. Healthy, if you take that out and they would have reached the same result anyway, then under Mt. Healthy there's no claim. So what I'm asking is, is there anything to show that they really cared about the substance of what he was saying? Well, Judge, that would be a question for the finder of fact. Is there anything in the record that would permit a jury to find that they were motivated by the content of the speech as opposed to the manner of the speech? Well, I believe there is, but first also let me say that they... What is it? Judge, they talk about his inability to follow rules and they talk about his violating the mask mandate, which is itself jumping the gun because there was never a finding that he... You know, this is the whole point of the argument is if the conductor can write me a ticket. If I'm violating a mandate but write me a ticket, I'll take it to court. That's what the argument was about. But also, some are judgment on Mt. Healthy grounds. I thought there was some emails about ignorance and arrogance and being an idiot and something about Trump. Which way do those cut? You could certainly draw inferences about their political opinions and so forth from the things that are exchanged back and forth among his supervisors. I'd like to know your answer to Judge Shinn's question too. What is your best evidence that there was a motivation about the... One of the motivations for rescinding the promotion was based on the content of what he said as opposed to the way he said it? Judge, please, I'm not trying to avoid the question. I'm not sure we have that burden to prove because I think if they took the action based on the speech, that's a First Amendment violation. But I think there's enough in the record to show that they disagreed with him about masking. That was clearly a big deal to them. It's not just him being rude. It's this language that he used. He used the... You went to summary judgment. So you got a discovery. And so you can't point to anything. Well, Judge, they take issue with everything that he was saying. The obedient dog metaphor, they didn't like it. But I submit that what it means, it's a metaphor for sort of unquestioning obedience to an administrative whim and unquestioning obedience to a government agent who's standing over my client, issuing him orders. They didn't like that. And so I submit that there's plenty there to make that inference in the record. Okay. You've reserved a couple minutes for rebuttal. Thank you. Good morning, Your Honors, and may it please the court. Anagha Sundararajan for the appellees. The district court correctly granted summary judgment here. And this court can affirm for two alternative reasons. First, under the Mad Healthy framework, any reasonable fact finder would conclude based on this record that the defendants would have revoked Sestaro's promotion even in the absence of any protected speech. And second, any reasonable fact finder would also conclude that the defendant's decision was justified under Pickering. And I'd like to begin with the Mad Healthy framework. As the district court correctly found here, defendants Panzer and Wertheim, which are the only two defendants involved in the decision making process, revoked the promotion based on plaintiff's rude and aggressive noncompliance with generally applicable rules and the reputational risk that a video documenting that conduct posed to the agency. These reasons are... The video wouldn't have gone viral if it were about a Knicks game, would it? Perhaps, perhaps. Two guys arguing about a Knicks game? I mean, a passenger conductor arguing about a Knicks game? I mean, isn't the whole context... So this is trouble, same trouble on your side that I have with the other side, is that the whole context is something that's combined, speech and conduct. And so why could a reasonable jury not find that conduct was imbued, the heated exchange was part of the very sensitive political question at the time? Certainly, Your Honor, and there are a couple of responses to that. The first is, as this court has held, where there is a single event that precipitates an employment decision, we have to disaggregate the content of the speech from everything else. And here, this is that summary judgment, as Your Honor points out. There is nothing in the record to suggest that the decision makers here considered the content of the speech. Rather, the entire focus, and as the record is very clear, the entire focus here was the aggressive manner, the aggressive and rude noncompliance, and the reputational harm. And this court has also held that the reputational harm is an independent, non-retaliatory basis to support the defendants under Mount Healthy. Wasn't there an email about ignorance? Yes, Your Honor. The conduct was ignorant? Is that what you're asking us to sort of presume from that? So Your Honor, in the record, this decision maker, Mr. Wertheim, was asked about what he meant by that statement. And he said at his deposition, he said again in his affidavit in support of summary judgment, that the ignorance he was referring to here was the ignorance of the expectation that employees of the board treat workers with respect at all times, regardless of whether they're on the job. And a reasonable jury found that implausible, that that's not a credible explanation in this context, that ignorant had to do with, I mean, what was going on in the whole context of the conversation was wearing a mask properly. So there's nothing in the record that will allow a jury to draw that inference, Your Could possibly discredit an explanation without pointing to anything else. It's just not sufficient to defeat summary judgment. And again, here, there is nothing in the record that the decision makers actually considered the content. Rather, the record is replete with examples of the decision makers discussing the unprofessional behavior, the fact that the behavior was rude and aggressive, and again, posed a reputational risk to the agency. And that is a sufficient non-retaliatory basis under Mount Healthy. Just briefly, Your Honor, I'd like to take through some of that evidence. First, both the contemporaneous emails from Panzer and Wertheim, these are the two decision makers, said very little or almost nothing about the content of the speech. Rather, they focused on the unprofessional behavior, on the fact that this was a poor way to treat a public worker, as well as their subsequent testimony, which clarified their impressions, which really focused on plaintiff's failure to treat the conductor with civility and respect. Additionally, with respect to the reputational harm, there is ample evidence here that the initial complaint was made by a member of the plaintiff's bar, someone who regularly appears before the board. There were additional complaints and comments made to other employees, including one who then called the plaintiff to let him know about this, and that this was the subject of frequent discussion in that week prior to when he would have been scheduled to take over as a supervisor, including in the lawyer's room before hearings, that this was something that everyone was talking about, that the relevant population for the Workers' Compensation Board was very upset about. And additionally, it's important here to recognize the nature of the supervisory position, which is very different from a line ALJ at this agency. In addition to managing an office and setting the tone and assigning cases, supervisory ALJs are, in many ways, the first point of contact for an institutional actor or an attorney or a client who has concerns about how their case is being handled, questions about the board's processes, and who want to raise a complaint, whether about an ALJ or about a case or something like that. And the supervisor is the first person who's responsible for managing the board's response to those concerns and for liaising with those members of the community. So what do we do if we think that the whole reason this became a brouhaha was because of the content of the conversation? So again, going back to if this were a Nick game or feet on the seat, it seems unlikely to me that this would have become, that this would have rose, it would have, TikTok wouldn't have gone viral, and people wouldn't have gotten worked up about, to submit a complaint about it. What if we assume that that's the case, that the content, it's not the content per se of the speech, but the context having to do with the First Amendment issue is what's infecting the entire process? So two responses to that, Your Honor. First, even if that's the context of why this went viral in the first place, the relevant inquiry under both Mount Healthy and Pickering is what the decision makers were focused on. And there's no evidence that the decision makers were focused on that. And second, under either analysis, even if that's the case, the reputational harm still weighs very strongly in favor of the agency. If we are deciding this under Mount Healthy, provides a non-retaliatory- Part of the context was who he was, right? That's correct. That he was going to be in this position of authority. That's correct, Your Honor. Part of the context- Does that matter? It does. Why does it matter? Certainly. It goes directly to the agency's assessment of the risk of reputational harm and the risk of disruption. It's not just who he was, but also the work that the agency does, and both of those are arising at the same time. Additionally, this court can also consider, again, under both analyses, the fact that in addition to the fact that this was part of the public discourse, this was also part of the work of the agency at this time. The agency was starting to adjudicate claims around workers who alleged COVID exposure in the workplace. It's very much part of the basket of information that the agency had available to it when considering and weighing the risk of disruption, which- The skepticism about the efficacy of masks was a conflict for an ALJ because of the work of the WCB. Is that what you're saying? No, Your Honor. It is not the content, but rather, again, the fact that he was reacting rudely and aggressively to a worker, that this was the cause of a lot of disruption among members of the bar, among insurance representatives, enough to raise this to a complaint to the head of adjudication, and the fact that this was extremely close in time to when the scheduled promotion would have taken effect. This was a few days before he was scheduled to be promoted. And again, the nature of the supervisory position, which is not just managing an office, but also responding to complaints and concerns from the relevant stakeholders. Your opposing counsel says that the district court erred by relying on Mount Healthy. I think the theory is that the district court was first required to determine whether the speech was constitutionally protected. Could we assume for the sake of argument that it was protected and then consider the Mount Healthy defense?  And both this court and district courts do that all the time at summary judgment. That's not unusual, and certainly something that was well within the district court's authority to do, and again, can do that under either Mount Healthy or Pickering. Thank you. If the court has no further questions, we ask that you affirm. Thank you. Thank you, counsel. We'll hear about it. Your honors, under the Supreme Court case Waters versus Churchill, before there's a finding of reputational harm, there has to be some investigation such that there's a good faith conclusion as to the facts that the fact finder is using, that the supervisors in this case would be using before taking the adverse action. Madeline Panzer made her decision right away when she watched the video. She didn't even, to this day, I don't think she's even asked Judge Sestaro his side of the story. Now, whether this clearly happened in his personal life, but whether it's in his personal life or in his work as a judge, whatever the context, this is a situation where he's alleged to have said something offensive or offended somebody. Nobody even asked his side of the story. They can't claim that there's reputational harm when they didn't even ask his side of the story. What did you mean by your words? Did you get a ticket? Why did you get up from your seat at that moment in time and follow the conductor and so forth? An objective analysis? I mean, we wouldn't look into what he was actually thinking, right? We look at objectively what someone looking at this incident or the video would be thinking. Well, he's entitled to explain himself to his supervisors, I would submit, before that action is taken. He can at least give his side of the story before, and furthermore, it's a legal step they have to take. But Waters is about disruption, right? And that's what we're talking about. So to Judge Chin's point, why is the nature of the disruption dependent on the motivation or explanations of the employee? Well, because his side of the story is never given, and it's simply not fair that he would suffer adverse employment action without even being able to explain his side of the story. As to summary judgment, it's a very high bar to grant summary judgment on Mt. Healthy Grounds. I direct the court's attention to Smith v. Suffolk County. It's almost never, in fact, I don't know that it has been granted on Mt. Healthy Grounds. Mt. Healthy itself, you have the speech, and then you have all this other stuff that's completely not related to the speech. You know, getting in fights with the cafeteria servers and so forth. Here, it's all tied into the speech. There simply is nothing that's outside of that circle, which they relied on. It's their own subjective characterizations, different adjectives they can use to describe the speech, but it's all speech. If summary judgment was going to be granted in their favor, it would have to be on Pickering. Pickering, that fails because they didn't do an investigation. So unless there are further questions from the court, we would rest on our arguments and papers. Thank you, counsel. Thank you both. We'll take the case under advisement.